# UNITED STATES DISTRICT COURT,
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| VICKI BLANSETT,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD G. FONFRIAS, individually, and FRONFRIAS LAW GROUP, LLC,<br><br>Defendants. | Case No. 21-cv-684<br><br>Judge _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, VICKI BLANSETT, by and through her undersigned counsel, states as follows as her Complaint against Defendants, RICHARD G. FONFRIAS, individually, and FONFRIAS LAW GROUP, LLC:

## THE PARTIES

1. Plaintiff, VICKI BLANSETT ("Ms. Blansett"), is an individual who is a citizen and resident of the State of California – who resides in Bakersfield, California.

2. Defendant, RICHARD G. FONFRIAS ("Mr. Fonfrias"), is an individual who is a citizen and resident of the State of Illinois, and who, upon information and belief, resides in this Judicial District.

3. Defendant, FONFRIAS LAW GROUP, LLC ("FLG"), is an Illinois limited liability company and Chicago law firm, with its principal place of business located at 70 W. Madison Street, Suite 1400, Chicago, Illinois 60602. At all relevant times, FLG was doing business, and/or regularly and continuously transacting business in the State of Illinois and in this District. Upon information and belief, Mr. Fonfrias is the only member of FLG.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper pursuant to this Court's diversity jurisdiction under 28 U.S.C, section 1332, because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and it is between citizens of different States. Venue is proper in this District pursuant to 28 U.S.C., section 1391(b)(1) and (2) substantially all of the actions or omissions occurred within this District and both Defendants reside within in this District.

**BACKGROUND FACTS**

5. On or about July 2, 2013, Ms. Blansett suffered serious injuries arising out of a slip and fall on the premises owned and controlled by the Quad Resort and Casino located in Paradise, Nevada. Caesars Entertainment Operating Company, Inc. ("Caesars") owned and operated that casino through one if its subsidiaries, 3535 LV Corp. In addition to sustaining a severe concussion, Ms. Blansett suffered significant injuries to her neck, back, shoulder. Ms. Blansett has received extensive treatment, which has not fully or successfully addressed her injuries, including decompression therapy, spinal stimulator, epidural injections, acupuncture, and chiropractic work.

6. As a result, in or about August 2013, Ms. Blansett retained a law firm in the State of Nevada to represent her in connection with that occurrence.

7. In or about October 2014, Plaintiff, through her Nevada-based law firm, filed a personal injury lawsuit in the State of Nevada (hereinafter "the Nevada Lawsuit"), captioned as *BLANSETT v. 3535 LV CORP., d/b/a THE QUAD RESORT AND CASINO and DOES I through X, and ROE CORPORATIONS XI through XX,* inclusive, case number A-14-697015-C, Dept. No. VIII (Eighth Judicial District Court, Clark County, Nevada).

8. At all relevant times, Ms. Blansett's attorneys represented to her that, *inter alia*, the Nevada Lawsuit had merit, and that she was likely to recover substantial monetary damages in the Nevada Lawsuit by way of either settlement or judgment.

9. In or about January 2015, while the Nevada Lawsuit was pending, Caesars and more than 170 of its subsidiaries filed Chapter 11 petitions. Defendant 3535 LV from the Nevada Lawsuit was one of those debtors. *See Caesars Entertainment Operating Co., Inc., et al.*, case number 15 B 1145 (hereinafter "the Bankruptcy Action").

10. The Bankruptcy Action automatically stayed Ms. Blansett from pursuing the Nevada Lawsuit.

11. Ms. Blansett's Nevada attorneys, on behalf of Ms. Blansett, filed a timely Proof of Claim in the Bankruptcy Action.

12. Approximately two years later, the Caesars Plan of Reorganization ("Plan") was confirmed. The Plan became effective in October 2017.

13. On the Plan's effective date, the stay, including with respect to Ms. Blansett's Nevada Lawsuit, terminated, and was replaced by a discharge injunction.

14. In or about 2018, Caesars proposed, and the court in the Bankruptcy Action approved, procedures for resolving personal injury claims, including Ms. Blansett's Nevada Lawsuit.

15. The purpose of those procedures was to "expedite the settlement or liquidation of claims."

16. As the first stage, those procedures established an "Offer Exchange" period. During the Offer Exchange period, Caesars had 60 days to make an initial settlement offer to a claimant, including Ms. Blansett. The claimant then had 30 days to accept the offer, reject it, or make a counter-offer. If the claimant made a counter-offer, Caesars had 21 days to accept or reject it. If

3

the process failed to produce an accepted settlement offer, the first stage ended. At that point, the claimant had 60 days to move in the Bankruptcy Action to modify the discharge injunction so the claim could be liquidated in another forum. If the claimant filed the motion, Caesars anticipated negotiating an order to resolve it. Most, if not all, led to agreed orders. If not, Caesars reserved the right to object to the claim.

17. In or about September 2018, Caesars mailed an offer for Ms. Blansett proposing to settle her claims arising out of the Nevada Lawsuit for the sum of zero dollars ($0.00).

18. In or about March 2019, Caesars moved in the Bankruptcy Action for the entry of an Order estimating Ms. Blansett's claim at zero dollars ($0.00).

19. Caesars noticed that motion for presentment on April 17, 2019, and served the Defendants with that motion.

20. When Caesars moved to estimate Ms. Blansett's claim, Ms. Blansett, through her Nevada attorneys, hired the Defendants to appear in the Bankruptcy Action and oppose that motion.

21. However, Defendants did <u>not</u> file any Preliminary Objection to Caesars' motion, as the Bankruptcy Court's Case Management Procedures required, nor did Mr. Fonfrias or anyone from his Defendant law firm appear on the April 17, 2019 presentment date. Defendants did not notify Ms. Blansett that they were not going to appear on April 17.

22. Defendants did not notify Ms. Blansett that they had not filed any Preliminary Objections to Caesars' motion, or that they had not even actually appeared on the April 17, 2019 presentment date.

23. Because Caesars' Motion was unopposed by Defendants, Caesars submitted a Certificate of no Objection, and that Motion was granted.

24. Defendants did not notify Ms. Blansett of that Certificate of no Objection, nor did they notify her of the fact that Caesars' Motion had been granted.

25. The Order granting Caesars' Motion estimated Ms. Blansett's claim at zero dollars ($0.00), allowed the claim in that amount, and discharged any portion over that zero-dollar figure. Defendants did not notify Ms. Blansett of that Order or its contents.

26. The 14-day appeal period came and went.

27. Defendants did not appeal the estimation Order; nor did they notify Ms. Blansett's that she had the ability to appeal the estimation order; not did they notify Ms. Blansett that they were not going to appeal the estimation Order; not did they notify Ms. Blansett that they had not actually appealed that estimation Order.

28. In or about July 2019, 3535 LV moved in the Nevada Lawsuit to dismiss Blansett's personal injury action. 3535 LV argued that, because Blansett's claim had been estimated in the Bankruptcy Action at zero dollars ($0.00), her claim had been discharged in the Bankruptcy Action, and she no longer had a cause of action to pursue.

29. Defendants did not notify Ms. Blansett in any manner that the motion to dismiss had been filed.

30. In the Nevada Lawsuit and in response to that motion to dismiss, Mr. Fonfrias filed an intentionally false affidavit.

31. In that false affidavit, Mr. Fonfrias falsely represented to the court in the Nevada Lawsuit that he had actually appeared before the court in the Bankruptcy Action on April 17, 2019. Furthermore, in that affidavit, Mr. Fonfrias further falsely claimed that the court in the Bankruptcy Action had informed him that the estimation order was entered "without prejudice to

either party, creditor or debtor," and that Ms. Blansett would be permitted to "file a motion to amend her proof of claim to the dollar amount claimed within this Nevada litigation."

32. The court in the Nevada Lawsuit granted the motion to dismiss Ms. Blansett's lawsuit.

33. In or about September 2019, Ms. Blansett, through her Nevada attorneys, retained new Chicago counsel to file a motion, pursuant to Rule 60(d)(6), requesting the entry of an Order vacating the estimation order (setting the value of her claim at zero dollars), and requesting that the discharge injunction in the Bankruptcy Action be modified so she could attempt to continue to pursue her personal injury case in the Nevada Lawsuit.

34. Ultimately, on or about January 28, 2020, the court in the Bankruptcy Action entered an Order denying Ms. Blansett's motion to vacate its estimation Order, which set the value of Ms. Blansett's clam at zero dollars.

35. In its Order, the court in the Bankruptcy Action indicated, *inter alia*, that "[W]hat happened to Blansett was unfortunate." *See* Bankruptcy Action, case number 15-01145, at docket number 9461 (filed and entered on 01/28/20), at page 6 of 7.

36. In that Order, the court in the Bankruptcy Action further stated, *inter alia*, that Mr. Fonfrias and his firm were some of the "guilty parties . . . Her remedies lie against them . . . When lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation." *Id.* at page 7 (citation omitted).

37. Accordingly, the court in the Bankruptcy Action held that "Blansett's motion to vacate the estimation order must be denied. And because her claim has been estimated at $0 and discharged, modifying the discharge injunction would be pointless. Her request to modify the discharge injunction must be denied as well . . . The motion of Vicki Blansett to vacate the order

estimating her claim at $0 and to modify the discharge injunction to allow her to pursue her personal injury action is denied." *Id.*

38. Moreover, because of the misconduct of Defendants, in that January 28, 2020 Opinion, the Court in the Bankruptcy Action specifically directed that, "A copy of this decision will be sent to the Illinois Attorney Registration & Disciplinary Commission." *Id.* at page 7.

## LEGAL CLAIMS

## COUNT I

39. Ms. Blansett incorporates by reference, and re-alleges as though fully set forth herein, paragraph 1 through 38 above as paragraph 45 of Count I.

40. As counsel for Ms. Blansett, Defendants owed Ms. Blansett a duty of care to, among other things, advise and counsel her regarding the status of the Bankruptcy Action, including but not limited to, filings made by the parties, deadlines set by the Court, and Orders entered by the Court; prosecute Ms. Blansett's claims in the Bankruptcy Action; comply with Orders entered by the Court in the Bankruptcy Action; timely advise Ms. Blansett of developments in the Bankruptcy Action; to timely file motions and other pleadings in the Bankruptcy Action.

41. By way of their actions and failures to act as set forth above, Defendants breached their professional duties and the applicable standards of care.

42. As a direct and proximate result of Defendants' breaches of their professional duties and the applicable standard of care, Ms. Blansett has and will continue to suffer monetary damages in an amount in excess of several hundred thousand dollars.

43. But for Defendants' breaches of their professional duties and the applicable standards of care, Ms. Blansett would have either received a substantial settlement or judgment in the Nevada

Lawsuit, or obtained collected a substantial settlement through the procedures employed in the Bankruptcy Action.

44. Indeed, upon information and belief with respect to personal injury matters and lawsuits resolved through the Bankruptcy Action or otherwise, plaintiffs/claimants received approximately two-thirds the value of their claims.

**WHEREFORE**, Plaintiff, Vicki Blansett, by and through her undersigned counsel, respectfully prays for the entry of judgment in her favor and against the Defendants, on Count I of this Complaint, in an amount in excess of the jurisdiction minimum of $75,000 and to be more specifically proven at trial, for all interest to which she is entitled to recover, for his costs, and for all such other and further relief as is appropriate under the circumstances.

**JURY TRIAL DEMANDED**

**RESPECTFULLY SUBMITTED**,

By:/s/*Michael I. Leonard*
**Counsel for Plaintiff**

**LEONARD TRIAL LAWYERS**
Michael I. Leonard
Rebecca Alexander
120 N. LaSalle Street, 20th Floor
Chicago, IL 60602
(312)380-6559 (direct)
(312)264-0671 (fax)
mleonard@leonardtriallawyers.com
ralexander@leonardtriallawyers.com